IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOELLE ANDERSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SPRINT NEXTEL CORPORATION, ET AL. | : | NO.  15-3672 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                          **August 31, 2015**

      Plaintiff, Joelle Anderson, has brought this action against her former employer, Sprint Nextel Corporation, Sprint United Management Company, Sprint, and Sprint Wireless (collectively referred to herein as "Sprint"), and Kelly Gabriel, a District Manager for Sprint, alleging that she was discriminated against on the basis of her sex, religion and disability in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.* Sprint has moved to dismiss certain of Plaintiff's claims and to strike related paragraphs of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).  For the following reasons, we grant the Motion in part, and deny it in part.

## I.    BACKGROUND

      The Complaint alleges the following facts.  Plaintiff, a Muslim female, began her employment with Sprint at its store in the Montgomery Mall in North Wales, Pennsylvania, on May 1, 2012.  (Compl. ¶¶ 3, 7, 20.)  Approximately five weeks after Plaintiff began working for Sprint, three of her male coworkers used vulgar and offensive language when speaking to her, and one of those men struck her with his chair.  (<u>Id.</u> ¶¶ 22-24.)  The store manager, Robert Boyd, overheard the men speaking to Plaintiff and admonished them to "watch it, there's a lady in the room."  (<u>Id.</u> ¶ 25.)  Despite this admonition, the Plaintiff's three male coworkers continued to make "crude and sexually charged comments" to Plaintiff.  (<u>Id.</u> ¶ 26.)  On other occasions,

Plaintiff's male coworkers followed her to the bathroom and made crude comments to her from outside of the bathroom door.  (Id. ¶ 36.)  On yet another occasion, in late July or early August 2012, one of Plaintiff's male coworkers referred to her as a "stupid bitch."  (Id. ¶ 37.)

On August 17, 2012, Boyd asked Plaintiff if there was something bothering her.  (Id. ¶ 38.)  Plaintiff told Boyd that a male coworker had called her a "stupid bitch" and complained that her coworkers were "f---ing with me" and would not leave her alone.  (Id. ¶ 39.)  Boyd asked Plaintiff if she wished to report these incidents to Sprint's Human Resources department, but Plaintiff declined because "she was fearful of retaliation due to the fact that she was a new employee and on probation."  (Id. ¶ 42.)  Boyd also made comments to Plaintiff that she felt were inappropriate.  Boyd informed Plaintiff "that he had cheated on his wife" and mentioned "that Plaintiff's hair looked 'nice' on a day that her hair was visible."  (Id. ¶ 29.)  In addition, Boyd "took photographs of Plaintiff, without her consent, on at least two (2) occasions."  (Id.)  After Plaintiff refused to talk to Boyd about his infidelities, Boyd retaliated against her by refusing to allow her to take Fridays off of work so that she could observe the religious customs of her faith; told her that she could not cover her hair at work, and refused to allow her to observe Eid al-Fitr.  (Id. ¶¶ 31-32, 34.)  He also made negative comments to Plaintiff about her religion and religious beliefs.  (Id. ¶ 35.)  In addition to these incidents, Plaintiff was treated differently from her male coworkers in the following ways:  (1) she was required to announce when she went to the bathroom even though male employees were not required to make such announcements; (2) she was only allowed to take one-half hour for lunch while male employees were allowed to take between 45 and 90 minutes for lunch; and (3) she was not permitted to leave the store for coffee during the day although male employees were permitted to leave the store to obtain coffee.  (Id. ¶ 46.)

2

Plaintiff eventually contacted Kelly Gabriel, a District Manager for Sprint, to complain about her working conditions.  (Id. ¶ 47.)  Gabriel told Plaintiff that he would inform Sarah King, a Human Resources Manager for Sprint, about her complaints.   (Id. ¶¶ 48, 50.)  Plaintiff subsequently emailed Susan King and spoke to King twice about her experiences in Sprint's Montgomery Mall store.  (Id. ¶ 50.)  Certain employees, including Boyd, were later terminated by Sprint "for violating Sprint's code of conduct, its business policies and standards of honesty and integrity."  (Id. ¶ 53.)

On November 28, 2012, after Plaintiff requested a transfer to another Sprint store, she was transferred to Sprint's Wyncote, Pennsylvania store, which is located in an unsafe location. (Id. ¶ 54.)  After Plaintiff was transferred to Wyncote, she was "subjected to continuing and unrelenting sexual and/or physical harassment, negative comments about her religion, as well as retaliation and disparate treatment by her co-workers and was retaliated against by Defendant Gabriel."  (Id. ¶ 55.)   The retaliation included placing Plaintiff on an "Action Plan for Improvement" on January 3, 2013, for using the "f" word during her August 17, 2012 conversation with Boyd.  (Id. ¶¶ 56, 58.)  As part of Plaintiff's Action Plan for Improvement, she was informed that she could be fired if she did not "'exhibit immediate and sustained improvement.'"   (Id. ¶ 57.)   On January 31, 2013, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging that she had been subjected to discriminatory practices in violation of the PHRA and that she had been retaliated against for opposing those practices.

On April 6, 2013, another employee at the Wyncote store threatened to kill Plaintiff.  (Id. ¶ 60.)  Plaintiff contacted King and told her about the threat.  (Id. ¶ 61.)  King told Plaintiff that Sprint would offer her two weeks of paid time off while it investigated.  (Id. ¶ 62.)  On April 11,

2013, before Plaintiff was scheduled to return from her paid time off, Gabriel contacted Plaintiff and told her that her leave of absence would end the next day, April 12, 2013, and that she was required to return to the Wyncote store.  (Id. ¶ 63.)  Sprint had not yet interviewed Plaintiff regarding the threat to her life and, thus, had not completed its investigation.  (Id. ¶ 64.) Plaintiff's attorney sent a letter to Gabriel asking why Plaintiff had been required to return to work.  (Id. ¶ 65.)  Gabriel instructed Plaintiff's counsel to contact counsel for Sprint.  (Id. ¶ 66.) Counsel for Plaintiff then contacted Sprint's counsel to complain about Plaintiff's treatment and stated that she was afraid to return to work.  (Id. ¶ 67.)  On April 17, 2013, Plaintiff wrote to King and stated that "her doctor was very concerned about her health, i.e., high blood pressure, constant migraines and severe back pain, and that as such, [she] believed that it was in her best interest to take King up on her offer to continue with [paid time off] until May 1, 2013[,] and then go out on short term disability."  (Id. ¶ 68.)

On June 4, 2013, Plaintiff received a letter from the manager of Sprint's Springfield, Pennsylvania location stating that Plaintiff had "'been absent from [her] job since May 1, 2013 without being on approved leave.'"  (Id. ¶ 69.)  The letter further stated that Plaintiff was required to "immediately return to work at the Springfield, PA location by Friday, June 7, 2013." (Id.)  If Plaintiff did not report to work by that date, her "absence [would] be considered a voluntary resignation" and her "employment [would] be terminated effective, Saturday, June 8, 2013."  (Id.)  Plaintiff did not return to work, rather, she provided Sprint with a Health Care Provider Certification signed by her orthopedist.  (Id. ¶ 70.)  Sprint did not respond to the Health Care Provider Certification and Plaintiff was subsequently either terminated or constructively discharged.  (Id. ¶¶ 71, 73.)

The Complaint asserts two claims for relief.  Count I asserts that Sprint discriminated against Plaintiff based on her gender, religion, and non-job related disability in violation of the PHRA.  Count II asserts that Sprint unlawfully retaliated against Plaintiff in violation of the PHRA for making internal complaints regarding Sprint's violations of the PHRA and filing a charge of discrimination with the PHRC.  Count II further asserts that the retaliation took the form of transferring Plaintiff to a less desirable store, putting her on an "Action Plan for Improvement" and either terminating her employment or forcing her to resign.

Sprint has moved pursuant to Rule 12(b)(6) to dismiss Plaintiff's claims of religious and disability discrimination in Counts I and II and her claim, in Count II, that she was wrongfully terminated or constructively discharged.  Sprint has also moved pursuant to Rule 12(f) to strike the allegations of the Complaint that relate to those claims.  Sprint bases its Motion on Plaintiff's failure to exhaust her administrative remedies with respect to those claims prior to filing the instant lawsuit.

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "'construe the complaint in the light most favorable to the plaintiff.'"  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion

5

couched as a factual allegation.'" <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" <u>Warren Gen. Hosp.</u>, 643 F.3d at 84 (quoting <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" <u>W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank</u>, 712 F.3d 165, 169 (3d Cir. 2013) (quoting <u>Twombly</u>, 550 U.S. at 555).

Rule 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike function 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" <u>Mitchell v. Cmty. Educ. Ctrs., Inc.</u>, Civ. A. No. 14-5026, 2015 WL 4770652, at *11 (E.D. Pa. Aug. 11, 2015) (quoting <u>McInerney v. Moyer Lumber & Hardware, Inc.</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). "'The standard for striking a complaint or a portion of it is strict, and only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" <u>Ford-Greene v. NHS, Inc.</u>, Civ. A. No. 14-

5846, 2015 WL 2395409, at *21 (E.D. Pa. May 20, 2015) (quoting <u>Steak Umm Co., LLC v. Steak 'Em Up, Inc.</u>, Civ. A. No. 09–2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009)). Consequently, "[m]otions to strike are generally disfavored by courts and will be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" <u>Mitchell</u>, 2015 WL 4770652, at *11 (quoting <u>Natale v. Winthrop Res. Corp.</u>, Civ. A. No. 07–4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008)).

## III.   DISCUSSION

### A.   <u>Motion to Dismiss Claims</u>

Sprint has moved to dismiss Plaintiff's claims for religious discrimination, disability discrimination, and wrongful discharge on the ground that those claims have not been administratively exhausted.   The PHRA provides that a plaintiff may bring an action for violation of the Act in court only if "within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party."   43 Pa. Stat. Ann. § 962(c).   The Pennsylvania Supreme Court has explained that "the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year in order to conduct an investigation of the charges and, if possible, conciliate the matter." <u>Clay v. Advanced Computer Applications, Inc.</u>, 559 A.2d 917, 920 (Pa. 1989) (quoting <u>Lukus v. Westinghouse Elec. Corp.</u>, 419 A.2d 431, 455 (Pa. Super. Ct. 1980)).   Consequently, a plaintiff asserting claims under the PHRA "must exhaust all administrative remedies prior to seeking redress in court." <u>Bailey v. Storlazzi</u>, 729 A.2d 1206, 1214 (Pa. Super. Ct. 1999) (citing <u>Clay</u>, 559 A.2d at 919; and <u>Parsons v. City of Philadelphia Coordinating Office of Drug & Alcohol</u>

Abuse Programs, 833 F. Supp. 1108 (E.D. Pa. 1993)).  The purpose of this requirement is "to use the greater expertise of administrative agencies in the area of unlawful discrimination, to promote voluntary compliance without litigation and to give notice to the charged party."  Id. (footnote omitted) (citing Lukus, 419 A.2d at 455; and Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998)).

Consequently, while "the scope of a judicial complaint is not limited to the four corners of the administrative charge[,]" id. (citing Doe v. Kohn Nast & Graf, P.C., 866 F. Supp. 190, 195 (E.D. Pa. 1994); "[t]he bounds of the civil action are defined by the scope of the administrative investigation that can reasonably be expected to arise from the administrative charges." Dieffenbach v. Dep't of Revenue, 490 F. App'x 433, 435 (3d Cir. 2012) (citing Atkinson v. LaFayette Coll., 460 F.3d 447, 453 (3d Cir. 2006)).   In order to determine whether Plaintiff has administratively exhausted the claims at issue, we compare the Complaint she filed in the instant matter to the complaint she filed before the PHRC (the "PHRC Complaint") and consider whether "the two sets of allegations . . . concern the same events, [whether] the scope of any investigation of [Plaintiff's] administrative complaint could . . . reasonably be expected to include the allegations raised in this cause of action."  Id.

Plaintiff agrees that her claim that she was discriminated against on the basis of a disability in violation of the PHRA should be dismissed.  (Pl.'s Mem. at 2, 3.)  We thus grant Sprint's Motion to Dismiss as to Plaintiff's claim for discrimination on the basis of non-job related disability and strike the paragraphs of the Complaint that support that claim.  Plaintiff also concedes that her claim that she was discriminated against on the basis of her religion in violation of the PHRA should be dismissed.  (Id. at 3.)  Accordingly, we grant Sprint's Motion to

Dismiss as to Plaintiff's claim that she was discriminated against on the basis of her religion in violation of the PHRA.

Plaintiff, however, maintains that her wrongful termination claim in Count II should not be dismissed because the instant Complaint plausibly alleges that she was terminated or constructively discharged in retaliation for making complaints about gender discrimination and harassment.  Plaintiff asserts that, because she asserted a claim for retaliation in her PHRA complaint, this claim has been administratively exhausted.  Consequently, in order to determine if we should dismiss Plaintiff's wrongful termination claim for failure to exhaust administrative remedies, we compare the instant Complaint with the PHRC Complaint and consider whether the PHRC's investigation of Plaintiff's retaliation claim would reasonably have included her termination or constructive discharge by Sprint.

Plaintiff's PHRC Complaint, which asserted claims against Sprint Nextel Corporation, the Montgomery Mall Sprint Store, Robert Boyd, and Kelly Gabriel, contains the following factual allegations.[1]  (PHRC Compl. ¶ 3.)  Plaintiff began working at the Montgomery Mall Sprint Store on May 1, 2012.  (Id. ¶ 4.)  Three of her male coworkers refused to help her when she asked for assistance and one of those coworkers, as well as two other male coworkers, used vulgar and offensive language in her presence.  (Id. ¶¶ 5, 7.)  One of her male co-workers struck

---

[1]We may consider the PHRC Complaint, which was attached by Sprint as an Exhibit to the Motion to Dismiss, because that document is a public record, and also because it has been identified in the Complaint and Plaintiff's claims are, in part, based upon this document.  See Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d 1192 at 1196); see also Huggins v. Coatesville Area Sch. Dist., Civ. A. No. 07-4917, 2008 WL 4072801, at *6 n.9 (E.D. Pa. Aug. 27, 2008) (stating that the court may consider a plaintiff's PHRC complaint that has been attached to defendant's motion to dismiss because that document "is both a public record and a document central to [the plaintiff's] allegation that he exhausted his administrative remedies").

her with a chair.  (Id. ¶ 7.)  Boyd told Plaintiff's male coworkers to watch their language, but they continued to make crude comments to her.  (Id. ¶ 8.)  Sometime in late July or early August, 2012, one of Plaintiff's male coworkers called her a "stupid bitch."  (Id. ¶ 10.)  On another occasion, a male coworker referred to Plaintiff as a "'dickhead.'"  (Id. ¶ 17.)  On August 17, 2012, Boyd spoke to Plaintiff in his office and asked her what was wrong.  (Id. ¶ 11.)  Plaintiff told Boyd that she had been called a "stupid bitch" and complained that her male coworkers "keep 'f---ing with me' and they will not leave me alone."  (Id.)  Boyd asked Plaintiff if she wanted to report the incident to Human Resources, but she declined because she was concerned that she was on probation.  (Id.)  Plaintiff was also treated differently than her male coworkers in that she was required to announce when she went to the bathroom, but they were not required to make similar announcements; she was permitted to take only a one-half hour lunch when they were permitted to take between 45 and 90 minutes; she was not permitted to leave the store to buy coffee, but her male coworkers frequently went out for coffee during the day; and she was not permitted to do non-work activities during the work day, but her male coworkers were permitted to do so.  (Id. ¶ 12.)  Plaintiff eventually contacted Kelly Gabriel.  (Id. ¶ 14.)  Plaintiff also emailed Sarah King and spoke to her twice about these events.  (Id. ¶ 18.)  Plaintiff subsequently requested a transfer to another store and was transferred to the Wyncote, Pennsylvania store, which is located in an unsafe location.  (Id. ¶ 19.)  She was subjected to retaliation and disparate treatment after her transfer, such as:  (1) on January 3, 2013 she was placed on an "Action Plan for Improvement" for "exhibiting 'inappropriate behavior towards others' and using 'profanity in the workplace' and showing 'a lack of professionalism.'"  (Id. ¶ 21.)  As part of Plaintiff's Action Plan for Improvement, she was informed that she could be fired if she did not "'exhibit immediate and sustained improvement."  (Id.)  Plaintiff was told that

she was placed on the Action Plan for Improvement because she used "the 'f' word in [her] meeting with . . . Boyd on August 17, 2012." (Id. ¶ 22.) Plaintiff asserted two claims in her PHRC Complaint. Count I asserted a claim for sexual harassment and gender discrimination in violation of Section 955(a) of the PHRA. (Id. ¶¶ 24-26.) Count II asserted a claim for retaliation as a result of Plaintiff's complaints about sexual harassment and gender discrimination, in violation of Section 955(d) of the PHRA. (Id. ¶¶ 29-30.)

Having compared the Complaint filed in this action to the PHRC Complaint, we find that the PHRC Complaint alleges that Plaintiff was placed on an "Action Plan for Improvement" in retaliation for making complaints about sexual harassment and discrimination. (PHRC Compl. ¶ 21.) In connection with that "Action Plan for Improvement," Plaintiff was informed that if she did not "'exhibit immediate and sustained improvement" she could be fired. (Id.) The Complaint in the instant action alleges that Plaintiff was fired or constructively discharged on June 8, 2013, six months after she filed her PHRC Complaint. (Compl. ¶¶ 59, 73.) Viewing the allegations in the Complaint and the PHRC Complaint in the light most favorable to Plaintiff, we conclude that the PHRC Complaint raised the possibility that Plaintiff was placed on the "Action Plan for Improvement" in retaliation for her complaints of sexual harassment and discrimination and that her placement on the "Action Plan for Improvement" could also result in Plaintiff's firing. We conclude, accordingly, that the scope of the PHRC's investigation that could reasonably be expected to arise from Plaintiff's PHRC Complaint included the possibility that Plaintiff might be terminated by Sprint in retaliation for her complaints of sexual harassment and discrimination and that Plaintiff has thus exhausted her administrative remedies in connection with her claim that she was wrongfully terminated or constructively discharged in retaliation for making complaints about sexual harassment and discrimination. See Dieffenbach, 490 F. App'x

11

at 435.  We therefore deny Sprint's Motion to Dismiss as to Plaintiff's claim that she was wrongfully discharged in violation of the PHRA in retaliation for making complaints about sexual harassment and discrimination.

     B.    <u>Motion to Strike Certain Allegations</u>

Sprint asks that we strike all of the allegations in the Complaint that relate to Plaintiff's claim that she was discriminated against on the basis of her religion since that claim was not exhausted.  Specifically, Defendants ask that we strike the reference to "religious discrimination" in paragraph 1, the reference to "religion - Islam" in paragraph 3, the reference to "religious creed" in paragraph 76, and strike paragraphs 32-35 in their entirety.  Paragraphs 32-35 contain allegations that, after Plaintiff refused to engage in discussions with Boyd regarding his infidelities, he stopped allowing her to take time off of work on Fridays so that she could attend worship; stopped allowing her to wear a scarf to cover her hair at work; prohibited her from celebrating Eid al-Fitr; and made negative comments about her religion.  Plaintiff argues that these allegations should not be stricken because they relate to her retaliation claim in Count II of the Complaint.  Specifically, Plaintiff argues that the disputed references and paragraphs simply describe a religious discrimination aspect of her retaliation claim, i.e., that she was discriminated against on the basis of her religion in retaliation for complaining about sexual harassment and discrimination.  In order to determine whether we should strike the factual allegations identified by Sprint because they are "so unrelated to the [Plaintiff's] claims as to be unworthy of consideration," <u>Ford-Green</u>, 2008 WL 2395409, at *21, we must determine whether the PHRC's investigation of her retaliation claim would have included the alleged religious discrimination.

Having compared the Complaint filed in this action to Plaintiff's PHRC Complaint, we find that the PHRC Complaint makes absolutely no mention of the following subjects that are

central to Plaintiff's present claim that she was discriminated against on the basis of her religion in retaliation for making complaints about gender discrimination and harassment:  Plaintiff's religion; anyone making negative comments regarding Plaintiff's religion; and Plaintiff's religious practices, including covering her hair, taking Fridays off work, and observing religious holidays.  We conclude that the allegations in the instant Complaint and the allegations in the PHRC Complaint thus do not "concern the same events" in connection with Plaintiff's retaliation claim and that the scope of the PHRC's investigation of Plaintiff's retaliation claim could not "reasonably be expected to include the allegations" regarding religion based retaliation that are raised in paragraphs 1, 3, 32-35, and 76 of the instant Complaint.  See Dieffenbach, 460 F.3d at 435.  We further conclude, accordingly, that the identified references to Plaintiff's religion in paragraphs 1, 3, and 76, the entirety of paragraphs 32-35 of the Complaint are unrelated to the claims of sexual harassment, discrimination and retaliation remaining in the Complaint and, therefore, if they are not stricken, these allegations may cause prejudice to Sprint and confuse the remaining issues in this case.  See Mitchell, 2015 WL 4770652, at *11 (quoting Natale, 2008 WL 2758238, at *14).  We thus grant the Motion insofar as it asks that we strike the reference to "religious discrimination" in paragraph 1, the reference to "religion - Islam" in paragraph 3, paragraphs 32-35, and the reference to "religious creed" in paragraph 76.

Sprint also asks that we strike all of the allegations in the Complaint that relate to Plaintiff's claim that she was discriminated against on the basis of a disability.  Plaintiff agrees that these allegations should be stricken.  (Pl. Mem. at 2, 3.)  Accordingly, we grant the Motion insofar as it asks that we strike the reference to Plaintiff's "non-job related handicap or disability" in paragraph 3, paragraphs 68 and 70-72, the reference to the "Health Care

Certification" in paragraph 73, and the reference to "non-job related handicap or disability including a failure to accommodate her disability" in paragraph 76.

Sprint further asks that we strike all of the allegations of the Complaint that relate to Plaintiff's claim that she was wrongfully discharged in retaliation for making complaints about sexual harassment and discrimination.  As we have denied Sprint's Motion to Dismiss as to that claim, we also deny Sprint's request that we strike the allegations of the Complaint relating to that claim.

IV.   **CONCLUSION**

For the foregoing reasons, we grant Defendant's Motion to Partially Dismiss and Strike Plaintiff's Complaint in part and deny it in part.  We grant the Motion with respect to Plaintiff's claims that she was discriminated against based on her religion and her non-job related handicap or disability and those claims are dismissed with prejudice.[2]  We also grant the Motion with respect to the request that we strike the following:  the reference to "religious discrimination" in paragraph 1; the reference to "religion - Islam, and her non-job related handicap or disability" in

---

[2]Ordinarily, when we dismiss a claim in a civil rights case, we must give the plaintiff an opportunity to amend her complaint.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment -- irrespective of whether it is requested -- when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  Plaintiff's claims that she was discriminated against based on her religion and non-job related handicap or disability, however, are dismissed with prejudice because amendment of the Complaint would be futile. The PHRA requires that any complaint filed pursuant to the Act to be "filed within one hundred eighty days after the alleged act of discrimination."  43 Pa. Stat. Ann. § 959(h).  The acts of discrimination alleged in the instant Complaint occurred between May 1, 2012 (the day Plaintiff was hired by Sprint) (Compl. ¶ 20), and June 6, 2013 (the day Plaintiff was allegedly wrongfully terminated or constructively discharged by Sprint (id. ¶ 73).  Consequently, it is presently too late for Plaintiff to exhaust these claims pursuant to the PHRA.

paragraph 3; paragraphs 32-35, 68, and 70-72; and the reference to "religious creed and/or non-job related handicap or disability including a failure to accommodate her disability" in paragraph 76.   We deny the Motion in all other respects.

BY THE COURT:

___S/_JOHN R. PADOVA__
John R. Padova, J.